```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                        WESTERN DIVISION


DERRICK LUCKETT d/b/a
LUCKETT ENTERPRISES, INC.                              PLAINTIFF

VS.                         CIVIL ACTION NO. 5:05-cv-144(DCB)(JMR)

THE TOWN OF BENTONIA; TOMMY HANCOCK,
IN HIS INDIVIDUAL AND OFFICIAL
CAPACITY; QUESS ALLEN, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY;
TREY BURTON, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY; ELAINE OSBORNE,
IN HER INDIVIDUAL AND OFFICIAL
CAPACITY; KIM SLIGH, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY                       DEFENDANTS
```

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on the motion for summary judgment **(docket entry 66)** filed by the defendants Town of Bentonia, Mississippi, and Tommy Hancock, Quess Allen, Trey Burton, Elaine Osborne and Kim Sligh, in their official and individual capacities. Having carefully considered the motion, response and memoranda, as well as all exhibits attached thereto, and being otherwise fully advised in the premises, the Court finds as follows:

The plaintiff, Derrick Luckett, brings this lawsuit against the defendants alleging violations of Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act), as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, <u>et</u> <u>seq</u>. The plaintiff is attempting to develop property that he owns located outside the corporate limits of the Town of Bentonia, in Yazoo

County, Mississippi. He alleges that the town violated the Fair Housing Act by denying his request to connect the proposed development to its water and sewer systems. The defendants move for summary judgment, asserting that the town's refusal to grant the plaintiff's request was based on legitimate nondiscriminatory reasons, and therefore was not in violation of the Fair Housing Act.

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A contested fact is "material" when it has the potential to change the outcome of the case. Ginsburg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue is "genuine" if "the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Id. A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue of material fact and

that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue as to a material fact actually exists. Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994). To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation." Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-movant must "designate specific facts showing the existence of a genuine issue for trial." Anderson, 477 U.S. at 250. "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Id. at 252. Moreover, the nonmoving party must make a showing sufficient to establish the existence of an essential element of its case, an

3

element on which it will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law. When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment. Anderson, 477 U.S. at 255. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper where the court merely believes it unlikely that the nonmovant will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962). By contrast, summary judgment for the moving party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party. Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In 2004, the plaintiff contacted the Town of Bentonia regarding the proposed use of his land in Yazoo County for a residential development, to be comprised of approximately eighty (80) to one hundred (100) single family homes ranging from 1200 to

4

1500 square feet and/or multi-family homes for low income individuals.  The plaintiff was informed when the Town of Bentonia Board of Aldermen meetings were held, and was invited to present his proposal at one of the meetings.  On January 4, 2005, Keith Whitfield, a representative of Luckett Enterprises, Inc., attended a Board of Aldermen meeting, and spoke to the Board about the plaintiff's proposed development.  The Board informed Whitfield that the town could not accommodate the proposed development, as it was outside the corporate limits of Bentonia, and suggested that he take the proposal to the Yazoo County Board of Supervisors. Minutes of January 4, 2005, Board of Aldermen Meeting.

On February 25, 2005, the plaintiff wrote a letter to the Town of Bentonia requesting that he be allowed to connect to the town's public sewer and water systems, so that he could complete his proposed development.  At its March 1, 2005, meeting, the Board discussed the plaintiff's letter, and decided that it addressed the same matter brought before the Board at its January 4, 2005, meeting.  The Board decided there was no need for any further response.  Minutes of March 1, 2005, Board of Aldermen Meeting.

On June 22, 2005, the plaintiff sent another letter to the Town of Bentonia, asking to be allowed to present his proposal at the July 5, 2005, Board meeting.  At the July 5, 2005, meeting, the plaintiff requested the Town of Bentonia to annex his property and allow him to connect to the town's water and sewer systems.  The

Board informed him that the town's water and sewer systems did not have the capacity to support a development as large as the one the plaintiff was proposing. The Board explained that the town was already dumping all the waste it could into the Big Black River and that it would be necessary to build a new lagoon to accommodate such a development, an undertaking not within the town's foreseeable budget. The Board also indicated that it would discuss the plaintiff's request with the city engineer and city attorney. Minutes of July 5, 2005, Board of Aldermen Meeting.

    Bentonia's mayor, Tommy Hancock, met with the city engineer, Wayne Morrison. Morrison explained to him that the town did not have the capacity to provide services to the plaintiff's proposed development, and that Bentonia had lost its fire rating because the water pressure and capacity were too low. The town had made efforts to improve its water system, but had not been able to complete the needed improvement. Morrison also explained that because of numerous problems with the town's sewer system, Bentonia did not have the ability to provide services to a development as large as the one proposed by the plaintiff. Deposition of Wayne Morrison, pp. 27-31, 67-69, 150-155, 180-187. At its meeting of August 2, 2005, the Board discussed the plaintiff's request as well as Morrison's recommendations, and decided to take no further action. Minutes of August 2, 2005, Board of Aldermen Meeting.

    The plaintiff maintains that his proposed development would

provide much-needed housing opportunities to African Americans, helping to alleviate the racial segregation of housing in Bentonia. Luckett also asserts that the defendants were motivated by a discriminatory purpose when they refused to allow him to connect to the town's water and sewer systems, and that the explanations put forward by the defendants for their refusal were pretexts for discrimination.  In addition, the plaintiff claims that the defendants have violated the Fair Housing Act by a policy or practice that has a disparate impact on a protected class.

Congress enacted the Fair Housing Act as Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601 et seq., "to provide, within constitutional limitations, for fair housing throughout the United States."  42 U.S.C. § 3601.  Section 3604(a), upon which the plaintiff relies, prohibits not only the refusal to sell or rent a dwelling, but also forbids all practices that "otherwise make unavailable or deny" housing to any person on the basis of "race, color, religion, sex, familial status,[1] or national origin."  The phrase "otherwise make unavailable or deny" has been interpreted to reach a wide variety of discriminatory housing practices, including exclusionary zoning and the refusal to permit tying into a city's water and sewer systems through the denial of permits and/or the denial of annexation.  See Kennedy Park Homes Ass'n, Inc. v. City

---

[1] The Fair Housing Amendments Act of 1988 extended the protected classes to include "familial status."

of Lackawanna, 436 F.2d 108 (2nd Cir. 1970); United Farmworkers v. City of Delray Beach, 493 F.2d 799 (5th Cir. 1974); United States v. Black Jack, 508 F.2d 1179 (8th Cir. 1974); Resident Advisory Board v. Rizzo, 564 F.2d 126 (3rd Cir. 1977).

The language of the Fair Housing Act is "broad and inclusive," subject to "generous construction," and "complaints by private persons are the primary method of obtaining compliance with the Act." Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 209 (1972). Under the Act, an "aggrieved person" may commence a civil action to obtain relief from an alleged discriminatory housing practice. 42 U.S.C. § 3613(a). The Fair Housing Act defines an aggrieved person to include any person who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(I). The Supreme Court has broadly construed the standing requirements under the Fair Housing Act, ruling that the "sole requirement" is the Article III criteria. Havens Realty Corp. v. Coleman, 455 U.S. 363, 372 (1982); Trafficante, 409 U.S. at 209.

The Supreme Court has also held that a plaintiff need not be a member of a protected class to bring suit under the Fair Housing Act, so long as the plaintiff suffered an actual injury due to the defendant's alleged discriminatory conduct. Gladstone, Realtors v. Vill. of Bellwood, 441 U.S. 91, 103 n. 9 (1979). In Growth

Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277 (3rd Cir. 1993), the Third Circuit concluded that a corporation which provided residential placements for mentally disabled individuals had standing to sue under the Fair Housing Act because the corporation alleged that it suffered economic injury as a result of discriminatory animus toward disabled people. Id. at 1282. In Hovsons, Inc. v. Township of Brick, 89 F.3d 1096 (3rd Cir. 1993), a nursing home developer was granted standing to raise claims on behalf of unidentified plaintiffs who would have resided in the proposed facility. Id. at 1100 n. 2. Thus, even if the plaintiff is not himself the target of discrimination, he may nevertheless sue under the Fair Housing Act under the theory that he has suffered a distinct and palpable injury as a result of animus toward a protected class. Gladstone, 441 U.S. at 114-15.

Based on the foregoing, the Court finds that Luckett's allegations meet the standing requirements under the Fair Housing Act. He alleges that his proposed development would be low or moderate income housing, which would benefit the African American community of Bentonia. Luckett need not allege with certainty that his potential tenants would be black. McCauley v. City of Jacksonville, N.C., 829 F.2d 36, 1987 WL 44775 *2 (4th Cir. 1987)(citing Scott v. Greenville County, 716 F.2d 1409, 1414 (4th Cir. 1983)). According to the complaint, the plaintiff's inability to build a residential development, due to the town's refusal to

allow tie-ins to water and sewer lines, is an economic injury that constitutes an injury in fact for standing purposes. Further, the complaint alleges that the injury resulted from racial animus and/or had a discriminatory effect. See Growth Horizons, 983 F.2d at 1282; Hovsons, 89 F.3d at 1100; Baytree of Inverrary Realty Partners v. City of Lauderhill, 873 F.2d 1407, 1408-09 (11th Cir. 1989); Havens Realty, 455 U.S. at 376; see also Smith v. Town of Clarkton, 682 F.2d 1055, 1065 (4th Cir. 1982)(Fair Housing Act prohibits discriminatory interference with private efforts to construct integrated housing).

When analyzing a claim of discrimination under the Fair Housing Act, the Court must apply the three-part burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Selden Apartments v. United States Dep't of Housing and Urban Development, 785 F.2d 152, 159 (6th Cir. 1986). In order to establish a prima facie case of housing discrimination, the plaintiff must show that: (1) he is a member of a protected class; (2) he applied for and was qualified for water service and sewer service from the town; (3) the water service and sewer service were denied; and (4) the defendants provided similarly situated individuals outside the protected class with water service and sewer service. Id.

The parties do not dispute that the plaintiff satisfies the

first element.[2]  The parties also do not dispute that the plaintiff made a request for services, although the defendants dispute whether the plaintiff was qualified for the services since his proposed development was outside Bentonia's corporate limits. Since the defendants offer the same argument as justification for their refusal to provide the services, the Court will assume the plaintiff was otherwise qualified for prima facie purposes, and address the defendants' argument after its discussion of the plaintiff's prima facie case.  As for the third element, the parties do not dispute that the services were denied.

To satisfy the fourth element, the plaintiff must show that similarly situated individuals outside the protected class were provided water and sewer services.  Although the plaintiff alleges that individuals outside the protected class were allowed to connect to the town's water and sewer services, he does not identify them, does not show how they were similarly situated, does not allege the dates they were allowed to connect, and does not indicate whether they lived in the town or in the county.  In fact, the defendants show that the Town of Bentonia has never provided sewer service outside its boundaries, and that no resident living outside the town's boundaries has been allowed to connect to the

---

[2] In this case, the plaintiff is black, and thus a member of a protected class.  As noted above, however, the plaintiff need not be a member of a protected class, so long as he suffered an actual injury due to the defendants' alleged discriminatory conduct. Gladstone, 441 U.S. at 103 n. 9 (1979).

town's water service in the last 17 years.  This evidence has not been meaningfully challenged by the plaintiff.

The plaintiff does, however, argue that the town should have granted his request for annexation of his property so that he could be provided the services.  Although the town is not obligated to annex the defendant's property, the plaintiff may show that the town's failure to annex his property was discriminatory if he can show that the town annexed the property of similarly situated individuals outside the protected class.  This he has failed to do.[3]

The plaintiff's failure to show that the defendants provided similarly situated individuals outside the protected class with water and sewer services and/or annexation is fatal to his prima facie case.  Assuming, however, that he could show that similarly situated non-minority residents received these services from the town, the burden under the McDonnell Douglas analysis would shift to the defendants to offer a legitimate nondiscriminatory reason for failing to approve the plaintiff's request for services.  The defendants' primary reason, of course, is that the plaintiff's

---

[3] Yazoo County Chancery Court records reveal that in the last twenty (20) years, the Town of Bentonia has been involved in only one annexation, in the year 1990.  Judgment Approving, Ratifying and Confirming the Enlargement of the Boundaries of the Town of Bentonia, Mississippi, May 31, 1990, Minute Book 102, Page 15, Records of Yazoo County, Mississippi.  The plaintiff does not show how the 1990 annexation constituted preferential treatment of similarly situated individuals outside the protected class.

proposed development is outside the town's boundaries and the town has no desire to annex the plaintiff's property. The plaintiff has failed to show that these reasons are pretexts for discrimination. Leaving those arguments aside, however, the defendants also assert that the town's water and sewer systems cannot support a development as large as the one proposed by the plaintiff. In fact, the town has had ongoing problems with both its water and sewer systems and lacks sufficient funds to improve them. Deposition of Wayne Morrison, pp. 180-187.

It is undisputed that the sewer system's capacity is inadequate for the plaintiff's proposed development. The plaintiff contends, however, that he offered a "complete free upgrade" of the sewer system if the town would allow him to connect to it. The evidence does not support this assertion. The plaintiff did not offer to pay the costs of upgrading the town's sewer system, but only the costs of connecting his housing development to the town's current water and sewer systems. Letter from Derrick Luckett to Mayor and Board of Aldermen, February 25, 2005; Letter from Derrick Luckett to Mayor and Board of Aldermen, June 22, 2005. Luckett also contends that he identified various sources of funding that would allow him to connect to the town's sewer system. Plaintiff's Brief, pp. 3-4. In fact, the funding he identified was a list of federal and state loans and grants that were available to municipal applicants. Deposition of Derrick Luckett, pp. 47-51. The Town of

Bentonia was already aware of these sources of funding, and had applied to the respective federal and state agencies for funding. However, even with the grants, the Town of Bentonia incurred substantial expenses including the requirement of matching funds, surveys, engineering reports, and fees for grant writers and administrators. Deposition of Wayne Morrison, pp. 46-53, 91-100. The town's sewer system remains inadequate despite the efforts of town officials. The plaintiff has failed to show that the town's legitimate nondiscriminatory reason for the denial of his request for services is pretext.

The plaintiff also seeks to show discrimination through evidence of the use of a racial slur by Mayor Hancock. The incident has no relation to the plaintiff or the proposed development. Moreover, the mayor of Bentonia does not have a vote on issues taken up by the Board of Aldermen. Deposition of Tommy Hancock, p. 54. The plaintiff offers no evidence of discriminatory comments by any of the aldermen. "[T]he bigoted comments of a few citizens, even those in power, should not invalidate an action which in fact has a legitimate basis." Hallmark Development, Inc. v. Fulton County, Georgia, 2006 WL 2884414 (11th Cir. 2006). Even if the plaintiff could show that the mayor opposed the project for racial reasons, it does not follow that one can infer that the actions of the Board of Aldermen were racially motivated. See McCauley v. City of Jacksonville, N.C., 739 F.Supp. 278, 282 (E.D.

N.C. 1989).

Finally, the plaintiff alleges in the alternative that the defendants violated the Fair Housing Act through a policy or practice that had a disparate impact on a protected class. To succeed on this claim, the plaintiff must identify a policy or practice that is facially neutral in its treatment of different groups but that in fact falls more harshly on one group than another and cannot be justified by business necessity. Int'l Brotherhood of Teamsters v. United States, 97 S.Ct. 1843, 1854-55 n. 15 (1977). The plaintiff has identified no such policy or practice. See Hanson v. Veterans Administration, 800 F.2d 1381 (5th Cir. 1986); Robinson v. City of Friendswood, 890 F.Supp. 616 (S.D. Tex. 1995).

The Court finds that the plaintiff has not shown the existence of a genuine issue of material fact regarding his claims under the Fair Housing Act. This is simply a case of the Board of Aldermen acting within its designated powers in deciding how the town should be developed. The town had legitimate governmental interests in refusing to annex the plaintiff's property and denying water and sewer services outside the town's corporate limits. Because the actions taken were race neutral, with no evidence to the contrary presented by the plaintiff, it was within the province of the defendants as town officials to take the course of action which they took. Accordingly,

IT IS HEREBY ORDERED that the defendants' motion for summary judgment **(docket entry 66)** is GRANTED.

A separate final judgment in accordance with Fed.R.Civ.P. 58 shall be entered, dismissing this action with prejudice.

SO ORDERED, this the __6th__ day of June, 2007.

                                                                      __s/ David Bramlette__
                                                           UNITED STATES DISTRICT JUDGE